UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATHALIE THUY VAN,<br><br>Plaintiff,<br><br>v.<br><br>BLACK ANGUS STEAKHOUSES, LLC,<br><br>Defendant. | Case No. 5:17-cv-06329-EJD<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 62, 71 |

Plaintiff Nathalie Thuy Van alleges in this action that she was exposed to harassment, retaliation and an illegal tip-sharing policy while working at a restaurant operated by Defendant Black Angus Steakhouses, LLC ("Black Angus"). Federal jurisdiction arises under 28 U.S.C. § 1331.

Presently before the court are the parties' cross-motions for summary judgment. Dkt. Nos. 62, 71. The court has carefully considered the parties' pleadings in conjunction with the record,[1] and has determined there are no triable issues of fact with respect to any of Plaintiff's federal claims. Thus, the court will grant Black Angus' motion in in part and deny Plaintiff's motion for the reasons explained below.

---

[1] The court has not considered Black Angus' request for judicial notice (Dkt. No. 63) because other litigations involving Plaintiff are entirely irrelevant to any issue under present consideration. See Ruiz v. City of Santa Maria, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (denying request for judicial notice, in part because information to be noticed did not bear on the "relevant issue" before the court).

For that same reason, the court has disregarded the discussion of purported problems during the discovery process. Those issues were referred to and addressed by the assigned magistrate judge. They are also external to whether or not there is a material issue of fact for trial.

## I. BACKGROUND

Plaintiff began working as a host at a Black Angus restaurant in Milpitas on or about June 16, 2017. Van Decl., Dkt. No. 72, at ¶ 3. The General Manager at the Milpitas location is John Marquardt. Marquardt Decl., Dkt. No. 62, at ¶ 1. The Assistant Manager was Ashlin Medel. Id. at ¶ 3.

Plaintiff alleges that approximately one week after she was hired, she and a male host were standing at a podium when a female bartender, Nicole Blasquez, came up to the podium. Van Decl., at ¶ 4. Plaintiff states that Medel walked behind Blasquez and "inappropriately touched, grabbed and rubbed" her buttocks, after which Blasquez asked Medel "why he touches her butt" all the time. Id. Plaintiff alleges that Medel responded by "making facial expressions of a sexual nature kissing and said, 'because your butt is . . .'" before whispering into Blasquez's ear. Id. at ¶ 5. Plaintiff states that Medel then pointed at the male host and said he "does not know any of that because he is half-boy and half-girl." Id.

On August 4, 2017, Plaintiff sent a complaint letter to several individuals at Black Angus, including Marquardt. Van Decl., at ¶ 7; Ex. 1. In the letter, Plaintiff recounted the incident between Medel, Blasquez and the male host, which she classified as sexual harassment. Plaintiff also wrote that Medel was "stealing employee tips" because she did not receive a $3 tip from a to-go order.

Black Angus responded to Plaintiff's August 4th letter on August 8, 2017, notifying Plaintiff it had initiated an investigation and requesting that Plaintiff keep the matter confidential. Id. at ¶ 8; Ex. 2. Plaintiff responded with another letter dated August 12, 2017, again recounting the incident between Medel, Blasquez and the male host.

Marquardt spoke with Blasquez and the male host in August, 2017, both of whom denied that Medel had engaged in the conduct Plaintiff described. Marquardt Decl., at ¶ 3; Scott Decl., Dkt. No. 62, at ¶ 3. Medel also denied stealing tips. Marquardt Decl., at ¶ 4. Black Angus eventually closed the investigation and determined that Plaintiff's claims were unsupported. Scott Decl., at ¶ 6.

Case No.: 5:17-cv-06329-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

2

Plaintiff was certified to work as a server on September 13, 2017. Van Decl., at ¶ 21. On September 23, 2017, Black Angus received an email complaint from a customer with the subject "Very Very Bad Experience - Milpitas." Van Decl., at Ex. 8; Marquardt Decl., at ¶ 8. The customer stated the service she received "on a Saturday evening around 8-9 pm" was slow and that the server was rude. After Marquardt exchanged messages with the customer for a "number of days," he was able to reach her and investigate her concerns. Marquardt Decl., at ¶ 8. Based on his discussion with the customer, Marquardt "discovered the server being complained about was Plaintiff." Id. Marquardt issued Plaintiff a "Performance Improvement/Recognition Notice" on October 12, 2017, addressing the customer complaint, on which he mistakenly indicated the incident occurred on "September 31, 2017."[2] Id.

Plaintiff sent a letter to Black Angus management on October 13, 2017, entitled "Summary of Incidents" and "Intention to File a Civil Lawsuit in Federal Court." Van Decl., at Ex. 4. There, Plaintiff stated the server trainer notified her "that all Black Angus restaurants require servers to give up 10% of their tips on the total of liquor, beer and wine sales to the bartenders, 1% of the food sales to the expo, and $1 to the busser for each table." Plaintiff claimed the tip-sharing policy was illegal. Black Angus management met with Plaintiff after receiving the October 13th letter. Van Dep., Dkt. No. 62, at 351:10-353:7.

On November 2, 2017, Black Angus received another complaint from a customer about the service provided by Plaintiff. Marquardt Decl., at ¶ 12. The customer eventually requested the meals be boxed to-go, and Marquardt decided not to charge the customer. Van Decl., at ¶ 34. On November 3, 2018, Marquardt issued Plaintiff a second "Performance Improvement/Recognition Notice" as a result of the November 2nd complaint. Id. at Ex. 21.

Plaintiff filed an administrative complaint with the California Labor Commissioner on September 26, 2017. Id. at Ex. 5. She also filed an administrative complaint Department of Fair

---

[2] The court takes judicial notice that the month of September has only thirty days. Fed. R. Evid. 201.

Case No.: 5:17-cv-06329-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
3

Employment and Housing on October 28, 2017. Id. at ¶ 31; Ex. 18. Plaintiff then filed this action on October 31, 2017. She asserts the following thirteen causes of action:

(1) "sexual harassment" in violation of Title VII of the Civil Rights Act of 1964;

(2) retaliation for reporting sexual harassment in violation of Title VII, § 218c(a)(5) of the Fair Labor Standards Act ("FLSA"), California Labor Code § 1102.5, and California "common law;"

(3) "unlawful practices regarding tip sharing practices" in violation of the Fair Labor Standards Act;

(4) retaliation for reporting unlawful tip sharing practices in violation of Title VII, § 218c(a)(5) of the Fair Labor Standards Act, California Labor Code § 1102.5, and California "common law;"

(5) defamation;

(6) breach of contract;

(7) intentional infliction of emotional distress;

(8) negligence;

(9) negligent infliction of emotional distress;

(10) negligent hiring, training and supervision of employee;

(11) fraud;

(12) negligent misrepresentation; and

(13) violation of the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 56

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

Case No.: 5:17-cv-06329-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
4

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. Id. at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Id. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

### B. Pro Se Pleadings

Where, as here, a pleading is filed by a plaintiff proceeding pro se, it must be construed liberally. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). The court "should use common sense in interpreting the frequently diffuse pleadings of pro se complainants." McKinney v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974). However, the court "need not give a plaintiff the benefit of every conceivable doubt" but "is required only to draw every reasonable or warranted factual inference in the plaintiff's favor." Id. Furthermore, a pro se party may not rest on conclusory allegations in opposition to summary judgment, "but must set forth specific facts showing that there is a genuine issue for trial." Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988).

## III. DISCUSSION

The parties cross-move for summary judgment on each cause of action. Since Plaintiff would bear the evidentiary burden at trial, Black Angus "need only point out an absence of evidence supporting the claim[s]." Celotex Corp., 477 U.S. at 325. If it does so, Plaintiff overcomes the motion only if she goes beyond the pleadings and cites to specific evidence creating a genuine dispute of material fact. Id. at 324.

Conversely, Plaintiff can prevail on her motion for summary judgment only by producing enough evidence to persuade "the court that there is no genuine issue of material fact" on each element of the claims, and that she is entitled to judgment as a matter of law. Id. at 323.[3]

### A. First Cause of Action: Sexual Harassment

#### i. Governing Authority

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Sexual harassment is a species of gender

---

[3] Black Angus' evidentiary objections to Plaintiff's declaration are OVERRULED. See Dillon v. Cont'l Cas. Co., 278 F. Supp. 3d 1132, 1137-38 (N.D. Cal. 2017)

Case No.: 5:17-cv-06329-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
6

discrimination" which falls into two categories: hostile work environment and quid pro quo. Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000). Liberally construed, Plaintiff's first cause of action falls into the former category.

"To prevail on a hostile work environment claim, an employee must show that her employer is liable for the conduct that created the environment." Fuller v. Idaho Dep't of Corr., 865 F.3d 1154, 1161 (9th Cir. 2017). An employee does so by proving she "1) was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) this conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (quoting Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995)). To be actionable, the working environment must be "'subjectively and objectively be perceived as abusive,' and the objective analysis is done 'from the perspective of a reasonable' woman." Id. (quoting Fuller, 47 F.3d at 1527).

The Ninth Circuit has established the following guidance to assess hostile work environment claims:

> In determining whether a work environment is sufficiently hostile, the court evaluates the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." While "'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' are not sufficient to create an actionable claim under Title VII . . . the harassment need not be so severe as to cause diagnosed psychological injury." "It is enough 'if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay in her position.'"

Id. at 1161-62 (internal citations omitted).

"[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991).

### ii. Application

Black Angus argues that Plaintiff cannot prove the third element of a hostile work environment claim because she was only exposed to two incidents that were not severe enough to alter the terms of her employment. The record supports this argument, even when construed in the light most favorable to Plaintiff.

Looking first at frequency, the record reveals Plaintiff was exposed to two incidents which occurred on the same day and around the same time: (1) Medel's physical contact with Blasquez's buttocks, and (2) Medel's comment about another employee's gender or sexuality. Plaintiff admits she has not experienced any other incidents of harassing conduct. Van Dep., at 94:25-95:9; 131:10-133:8; 179:5-8. A reasonable jury could not find based on these isolated incidents that Plaintiff experienced pervasive harassment at her workplace. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (holding that Title VII is not a "general civility code" and that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"); see also Brooks, 229 F.3d at 924 ("[A]n isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship."); see also Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1020 (9th Cir. 2018) (holding school vice principal did not create hostile work environment by chiding teacher for "ragging" students since the "comments were not part of a larger series of ongoing harassment that [the plaintiff] suffered"); see also Harris v. Sutton Motor Sales & RV Consignments Corp., 406 Fed. App'x 181, 183 (9th Cir. 2010) (holding that two or three offensive comments made "largely in a flurry" around the same day did not constitute pervasive harassment).

Nor could a reasonable jury find these incidents severe enough on their own to create a hostile work environment. "If a single incident can ever suffice to support a hostile work environment claim, the incident must be extremely severe." Brooks, 229 F.3d at 926; accord Faragher, 524 U.S. at 788 ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."). A Title VII violation "is not established

Case No.: 5:17-cv-06329-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
8

merely by evidence showing sporadic use of abusive language, gender-related jokes, and occasional teasing." EEOC v. Prospect Airport Servs., Inc., 621 F.3d 991, 998 (9th Cir. 2010) (internal quotation omitted). "Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1113 (9th Cir. 2004). Moreover, the fact that conduct or comments are directed at employees other than the plaintiff can lessen the objective degree of severity. See Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1110 (9th Cir. 2000).

Here, Plaintiff states that Medel "inappropriately touched, grabbed, and rubbed" Blasquez's buttocks, and made "facial expressions of a sexual nature kissing and said, 'because your butt is . . .,'" before whispering into Blasquez's ear. Plaintiff also states that after the incident with Blasquez, Medel pointed at a male host and said he "does now know any of that because he is a half-boy and half-girl." Plaintiff never complained that Medel directed any inappropriate conduct toward her. In terms of severity, these factual circumstances are comparable to cases in which the plaintiff was found *not* to have sustained a hostile work environment claim based on isolated instances of harassment. See, e.g., Brooks, 229 F.3d at 926 (holding the plaintiff could not pursue a hostile work environment claim against employer after coworker touched her stomach, fondled her bare breast, and suggested they commence a relationship); Candelore v. Clark Cty. Sanitation Dist., 975 F.2d 588, 590 (9th Cir. 1992) (holding that "isolated incidents of sexual horseplay" occurring over a period of years were not egregious enough to create a hostile workplace).

In her motion, Plaintiff repeats allegations from the Complaint that Medel's conduct was "uninvited and unwelcome," that Plaintiff found it "extremely offensive," and that Plaintiff was "very much affected" by it. These allegations may be true, and the court construes these statements in the light most favorable to Plaintiff for this analysis. Doing so, however, only assists Plaintiff with satisfying one part of her dual burden by demonstrating the environment at Black Angus was, at most, subjectively offensive. These statements do not show that a reasonable

Case No.: 5:17-cv-06329-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
9

employee in Plaintiff's position would have found the environment hostile or abusive. See Fuller, 865 F.3d at 1161.

Considering all the circumstances, including the undisputed facts that Medel's conduct was concentrated on one occasion, was not repeated, and was not directed toward Plaintiff but to another employee, the court finds no triable issue of fact concerning whether the conduct was so severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive working environment. Because Plaintiff has not produced sufficient evidence to prove the claim's third element, Black Angus' summary judgment motion will be granted as to the first cause of action alleging sexual harassment. Plaintiff's cross-motion will be denied.

### B. Second and Fourth Causes of Action: Retaliation for Reporting Activity

#### i. Governing Authority

Plaintiff alleges in the second and fourth causes of action that Black Angus retaliated against her after she reported sexual harassment and complained about the company's tip-sharing policy. Though the Complaint specifies these claims arise under federal and state law, the court focuses on the federal issues for reasons that will become apparent.

To make out a prima facie case of retaliation in violation of Title VII, a plaintiff must establish (1) that she acted to protect her VII rights, (2) that an adverse employment action was thereafter taken against her, and (3) that a causal link exists between these two events. Kortan, 217 F.3d at 1112. Title VII retaliation claims are analyzed using a burden-shifting framework. Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1284 (9th Cir. 2001). "[A]fter the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action." Id. "If the employer rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible retaliation." Id.

### ii. Application

#### a. *Prima Facie Case*

Black Angus argues Plaintiff cannot establish a prima facie case of retaliation because she was not subjected to an "adverse employment action," and there is no causal link between her complaints and any retaliatory actions. The court disagrees.

#### *1. Adverse Employment Action*

The Ninth Circuit broadly defines "adverse employment action" (Fonseca v. Sysco Food Servs. of Ariz., 374 F.3d 840, 847 (9th Cir. 2004), but has explained that "[n]ot every employment decision amounts to an adverse employment action." Brooks, 229 F.3d at 928 (quoting Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 869 (9th Cir. 1996)). "[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." Id. "[T]ermination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion" are examples of decisions that can constitute an adverse employment action. Id. A warning letter may also be considered an adverse employment action. Fonseca, 374 F.3d at 847-48.

Here, the record shows that on October 12, 2017, Marquardt issued Plaintiff a "Performance Improvement/Recognition Notice" for poor guest service, citing Plaintiff for delays in taking and delivering food and drink orders. Van Decl., at Ex. 7. Marquardt wrote that the notice would be placed in Plaintiff's personnel file. He also included the following warning "Please be aware that any further incidents of this kind will be subject to disciplinary action, up to and including termination."

The record also shows that on November 3, 2017, Marquardt issued another "Performance Improvement/Recognition Notice" to Plaintiff for poor guest service. Id. at Ex. 21. This notice was labeled as a "final warning." Marquardt wrote: "At this time, I would like to take this opportunity to clarify and review the Job Description for Food Server so that you understand what is expected of you in order to continue your employment with Black Angus."

Construing the notices in Plaintiff's favor, a reasonable jury could find that each constitutes an adverse employment action. As described, the notices were formal warnings to Plaintiff that discipline or termination could result if she did not improve her performance. And Marquardt, as Plaintiff's supervisor, "can communicate with Human Resources to discuss discipline and possible termination of employees." Marquardt Decl., at ¶ 7. Though Black Angus seemingly plays down the significance of the notices, the evidence could nonetheless support classifying the notices as non-trivial actions that would deter reasonable employees from lodging complaints if done in retaliation for protecting Title VII rights. See Brooks, 229 F.3d at 928. Black Angus' argument to the contrary based on James v. C-Tran, 130 Fed. App'x 156 (9th Cir. 2005), is unpersuasive because the facts of that case are distinguishable. Whereas the notices issued to Plaintiff could be construed as forms of progressive discipline, the performance improvement plan examined in James "was non-disciplinary training" that did not affect the plaintiff's compensation or terms of employment.[4]

The notices aside, the additional negative actions referenced by Plaintiff in her pleadings are not "adverse employment actions." Plaintiff argues Black Angus terminated her employment for a number of days, and did not compensate her for time she worked. The documents Plaintiff references, however, do not support these facts even when construed in Plaintiff's favor. Exhibit 12 to Plaintiff's declaration is an email exchange that, if anything, shows that Plaintiff's paycheck was not delivered because her identifying information was not entered correctly into the payroll system. Plaintiff offers no evidence to dispute that explanation. Exhibit 13 seems to be a listing of the hours Plaintiff worked. And rather than showing that Plaintiff was terminated, Exhibit 14 shows that Black Angus actually paid Plaintiff in cash in lieu of a paycheck on October 27, 2017. It may have been less than Plaintiff was actually owed, but the inference of "termination" that Plaintiff draws from this evidence is unreasonable and not one the court must accept. See McLaughlin v. Liu, 849 F.2d 1205, 1207-1208 (9th Cir. 1988) (explaining the district court may

---

[4] Furthermore, James is a non-citable unpublished opinion. See 9th Cir. R. 36-3.

reject implausible inferences from circumstantial evidence on summary judgment).

Plaintiff also argues, based on a correction to her deposition transcript, that Black Angus "vocally told [Plaintiff] to look for another employment at a meeting in plain view and hearing of restaurant guests." Assuming as the court must that this incident occurred, Plaintiff offers no other evidence about the incident to support the conclusion that it would have dissuaded a reasonable employee from complaining about a Title VII violation. The court therefore finds the incident is trivial and non-actionable. See Brooks, 229 F.3d at 928; accord Nunez v. City of Los Angeles, 147 F.3d 867, 875 (9th Cir. 1998) (holding that "[m]ere threats and harsh words are insufficient" to show an adverse employment action).

In addition, there is insufficient evidence to support any suggestion that Black Angus' tip-sharing policy, which Plaintiff admits was equally enforced at all Black Angus locations and not disproportionately imposed on her, constitutes an adverse employment action. Nor has Plaintiff identified evidence on which a reasonably jury could find that "micromanaging" by her manager or any purported reduction in her work hours constitute adverse employment actions, particularly when Plaintiff admits she was offered additional work hours as a host but declined.

*2. Causal Link*

The question now becomes whether Plaintiff can show a causal link between her reporting activity and the two adverse employment actions identified above.

To establish causation for a Title VII retaliation claim, a plaintiff must produce evidence to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013). "That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'" Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1371 (9th Cir. 1987)). "In addition, the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the

plaintiff had engaged in protected activity." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003). Furthermore, the court is mindful "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

When the record is construed in Plaintiff's favor, it reveals sufficient evidence to infer a causal connection between the adverse employment actions, which here are the two "Performance Improvement/Recognition Notices" issued by Marquardt, and her complaints about tip sharing and sexual harassment. Two of the letters Plaintiff sent to Black Angus management, dated August 4, 2017, and August 12, 2017, closely preceded the first adverse action on October 12, 2017. Similarly, the third letter dated October 13, 2017, closely preceded the second adverse action on November 3, 2017. The proximity in time between these events at least circumstantially suggests the complaints were the "but for" cause of the adverse actions. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-274 (2001) (holding that when causation for a prima facie claim of retaliation is based on temporal proximity, the timing must be "very close").

A reasonable jury could also infer that Marquardt was aware of Plaintiff's complaints when he issued the improvement notices. Indeed, the letter complaints dated August 4, 2017, and October 13, 2017, are specifically addressed to Marquardt, among other individuals at Black Angus. And Marquardt notably admits he received Plaintiff's August 4th complaint and knew something about Plaintiff's complaints at least by the time he issued the second performance notice on November 3, 2018. Marquardt Decl., at ¶¶ 3, 12 ("On November 2, 2017, I received another guest complaint regarding Plaintiff. Although by this time *I was aware that Plaintiff was likely suing the company and that I would likely be accused of wrongdoing*, it was important to issue another performance memo to Plaintiff . . . ."). In addition, Marquardt had been personally served with the Summons and Complaint in this action on November 2, 2018. Van Decl., at Ex. 20. The contention that no one involved in Plaintiff's discipline was aware of her formal

Case No.: 5:17-cv-06329-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
14

complaints to administrative agencies does not defeat this inference, because Plaintiff's informal complaints to Black Angus management independently constitute protected activity for a Title VII retaliation claim. See Raad, 323 F.3d at 1197 ("Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to 'oppose[ ]' an employer's discriminatory practices."); see also Ray, 217 F.3d at 1240 (recognizing that informal complaints can constitute protected activity under Title VII); see also Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir. 1994) (holding that complaints concerning the mistreatment of others is considered a protected activity).

In sum, there is sufficient circumstantial evidence to support an inference of causation. With that, the court finds that Plaintiff has established a prima facie case of retaliation for the second and fourth causes of action.

### *b. Legitimate, Non-Retaliatory Reason*

The burden shifts to Black Angus to "to articulate a legitimate, non-retaliatory explanation for the adverse employment action." Winarto, 274 F.3d at 1284. This is solely a burden of production; "the defendant need not persuade the court that it was actually motivated by the proffered reasons." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993). Black Angus has met its burden here.

According to Marquardt, he issued the performance notices to Plaintiff after Black Angus received two customer complaints. As to the first notice, Marquardt states it arose after Black Angus received a complaint on September 23, 2017, via email. Marquardt Decl., at ¶ 8. Marquardt contacted the complaining customer and determined that Plaintiff was the subject of the complaint. Id. Marquardt issued the performance notice to Plaintiff only after making that determination. Id.

As to the second notice, Marquardt states Black Angus received another customer complaint regarding Plaintiff on November 2, 2017. Id. at ¶ 12. The content of the notice shows that Marquardt was personally involved in the incident underlying the complaint, and that he

Case No.: 5:17-cv-06329-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

15

obtained additional information from the manager on duty and another server.

The court understands that Plaintiff disputes Black Angus' explanations. But at this point, the veracity of Black Agnus' evidence is not at issue. See St. Mary's Honor Ctr., 509 U.S. at 509 (holding a defendant meets the burden of production by "introduc[ing] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action"). Since a reasonable jury could find the adverse employment actions resulted from customer complaints rather than from unlawful discrimination, the court finds Black Angus satisfied its burden to identify legitimate, non-retaliatory reasons for its actions.

### 3. Pretext

In the face of Black Angus' showing, Plaintiff must demonstrate that Black Angus' reasons were "merely a pretext for impermissible retaliation." Winarto, 274 F.3d at 1284. "Pretext may be shown either (1) directly by persuading the jury that a discriminatory motive more likely than not motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. "Very little" direct evidence is needed to establish pretext, "but if circumstantial evidence is offered, such evidence has to be 'specific' and 'substantial.'" Id. (quoting Godwin v. Hunt Wesson Inc., 150 F.3d 1217, 1222 (9th Cir. 1998)). At this level of the analysis, the previously-established inference of discrimination "simply drops out of the picture." Hicks, 509 U.S. at 511; accord Wallis, 26 F.3d at 892. But the court "must consider all the evidence, including that offered to establish the prima facie case[ ]" to determine whether Plaintiff has offered sufficient evidence to permit a rational trier of fact to find in her favor. Wallis, 26 F.3d at 892.

Liberally construing Plaintiff's pleadings, the court understands her pretext argument to be this: that Black Angus' explanation is not credible because the customer complaints cited in the performance notices either never occurred or did not apply to her. Pl.'s Reply, at 9:9-10 ("Defendant's nonretaliatory reasons are pretextual. Defendant's asserted reasons for its adverse action are false and Defendant offered as a cover-up for its actual retaliatory intent."). For

example, she contends in her Separate Statement that the first complaint was "made up," that she did not work on "September 31, 2018," and that she did not work as a server on any Saturday from the date she started in that position to the date of the complaint. Plaintiff also contends the second complaint was not due to her conduct, but because of Marquardt "sitting five guests in a straight booth enough space for four people," and another employee failing to follow the "Team Food Policy."

Plaintiff's approach based on circumstantial evidence of a retaliatory motive is problematic as a demonstration of pretext. Whether Plaintiff can prove she was not the employee responsible for the complaints as matter of fact is not the complete question because this is not a disciplinary appeal. Instead, for the purposes of a Title VII claim, courts "only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002); Culver v. Qwest Commc'ns Corp., 306 Fed. App'x 403, 405 (9th Cir. 2009) (holding a plaintiff "cannot avoid summary judgment merely by arguing that his termination was based on a reason that turned out to be false").

Here, Plaintiff has not produced "specific" and "substantial" evidence to show that Black Angus did not honestly believe that Plaintiff was the server responsible for the customer complaints. The record does not show, for instance, that the complaints were manufactured, that Marquardt did not actually investigate the first complaint or witness the event that led to the second complaint, or that Marquardt deviated from Black Angus' procedures when he issued the performance notices. To the contrary, undisputed evidence shows that (1) issuing performance notices is a standard part of Black Angus' employment procedures, (2) that the first complaint was in fact received by Black Angus via email, (3) that Marquardt contacted the guest who lodged the first complaint and determined that Plaintiff was the responsible server, and (4) that Marquardt was present for the incident that led to the second complaint. Marquardt Decl., at ¶¶ 6, 7; Van Decl., at ¶¶ 34-36; Ex. 8. Even if employees other than Plaintiff were to blame for either

complaint, that finding would not demonstrate Black Angus' non-retaliatory rationale is "so implausible as to be unworthy of credence." Norris v. City & Cty. of San Francisco, 900 F.2d 1326, 1330 (9th Cir. 1990).

Nor does the evidence offered for the prima facie case undercut Black Angus' explanation for the performance notices. A reasonable jury could not find based on the temporal proximity between Plaintiff's informal complaints and the notices, and Marquardt's possible knowledge of Plaintiff's complaints, that Black Angus did not hold an honest belief that Plaintiff was the employee who caused the customer complaints.

After that, all that remains are self-serving statements about other employees' motivations and conclusory allegations from Plaintiff's declaration. See, e.g., Van Decl., at ¶ 30 ("The October 12, 2017 first written warning regarding the false poor guest service incident . . . ."); ¶ 35 ("Black Angus set the guests to complain about food service at my table . . . ."). These statements are not enough to create a material issue of fact. See Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988) ("[C]onclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment"); see also Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (holding "conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment").

Accordingly, the court finds that Plaintiff did not sustain her burden to establish that the reasons for the adverse employment actions proffered by Black Angus are pretext for retaliation. Because there is no triable issue for the second and fourth causes of action to the extent they contain claims under Title VII, Black Angus is entitled to summary judgment.

In addition, the court will grant summary judgment to Black Angus for any retaliation claims brought pursuant to § 218c(a)(5) of the FLSA because there is no evidence to support a claim under the Patient Protection and Affordable Care Act.

**C.   Third Cause of Action: Unalwful Tip Sharing**

Plaintiff alleges that Black Angus forces her to participate in a tip sharing practice that

"constitutes a willful violation of the Fair Labor Standards Act."

In Cumbie v. Woody Woo, Inc., 596 F.3d 577, 583 (9th Cir. 2009), the Ninth Circuit held that "an employment practice does not violate the FLSA unless the FLSA *prohibits* it," and that "nothing in the text of the FLSA purports to restrict employee tip-pooling arrangements when no tip credit is taken." This holding remains true even if an employer's tip pool includes non-customarily tipped employees. Id. at 581.

Plaintiff provides no legal authority contrary to Cumbie, and offers no evidence that Black Angus takes a tip credit or that its tip sharing policy otherwise violates the FLSA. Thus, there is no triable issue of fact concerning Plaintiff's allegation that Black Angus maintains an unlawful tip sharing policy. Summary judgment will be granted in favor of Black Angus on the third cause of action.

### D. State Law Causes of Action

Plaintiff's remaining claims arise under California state law.

The jurisdiction of federal courts is limited, and is only properly exercised over those cases raising federal questions or involving parties with diverse citizenship. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). "[O]nce a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Id. However, a district court may properly decline to exercise supplemental jurisdiction over state-law claims if such claims "substantially predominate[ ] over the claim or claims over which the district court has original jurisdiction" or if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Since this order resolves the federal claims asserted in this action, the court will decline supplemental jurisdiction over the state law claims. Those claims will also be dismissed without prejudice. See 28 U.S.C. § 1367(c)(3); see also Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc).

Case No.: 5:17-cv-06329-EJD
ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
19

## IV. ORDER

Based on the foregoing, Plaintiff's Motion for Summary Judgment (Dkt. No. 71) is DENIED.

Black Angus' Motion for Summary Judgment (Dkt. No. 62) is GRANTED IN PART as follows:

1. The motion is GRANTED as to the first and third causes of action in their entirety; and

2. The motion is GRANTED as to the second and fourth causes of action to the extent they seek relief under Title VII or 29 U.S.C. § 218c.

All other causes of action are DISMISSED WITHOUT PREJUDICE. Any remaining matters are TERMINATED and VACATED. Judgment will be entered in favor of Black Angus and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: November 20, 2018

EDWARD J. DAVILA
United States District Judge